UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/10/2015

------------------------------------------------------------X
: 14 Civ. 7923 (PAE)
IN RE MILLENNIAL MEDIA, INC. SECURITIES :
LITIGATION : OPINION & ORDER
:
------------------------------------------------------------X

------------------------------------------------------------X
:
PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF :
MISSISSIPPI, *individually and on behalf of all others*
*similarly situated*,
:
Plaintiff, : 14 Civ. 7923 (PAE)
:
-v- :
:
MILLENNIAL MEDIA, INC., et al., :
:
Defendants. :
:
------------------------------------------------------------X
:
TRAVIS OSTROVIAK, *individually and on behalf of all* :
*others similarly situated*,
:
Plaintiff, : 14 Civ. 8330 (PAE)
:
-v- :
:
MILLENNIAL MEDIA, INC., et al., :
:
Defendants. :
:
------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

In fall 2014, the above two putative class actions were filed, under the federal securities

laws, on behalf of all purchasers of Millennial Media, Inc. ("MM") securities between March 28,

2012 and May 7, 2014.  In each, plaintiffs claim that MM and the individual defendants (directors, officers, and executives of MM) made false and misleading statements about the company's technological capacities and outlook, which artificially inflated the prices of MM stock.  They further allege that, when the stock's price later dropped sharply over a series of dates, harming shareholders, it did so in response to disclosures as to MM's disappointing earnings and its deteriorating outlook, which operated as corrective disclosures of MM's earlier false and misleading statements.

Pending before the Court are two sets of motions.  One, which is unopposed, is to consolidate these related actions.  The other consists of motions from five investors, each seeking appointment as lead plaintiff (or co–lead plaintiff) and appointment of their respective attorneys as lead counsel (or co–lead counsel).  These five movants are: (1) the Public Employees' Retirement System of Mississippi ("Mississippi"), a pension plan; (2) the "Selz Funds," four separate investment vehicles overseen by Bernard Selz (he is settlor, director, or managing member of each); (3) Marvin Christensen and Michelle Dayan ("Christensen"); (4) Chu-Ying Tou and Jien-Ning Kang ("Kang"); and (5) Travis Ostroviak ("Ostroviak").[1]  Mississippi and the Selz Funds have also proposed to serve together as co–lead plaintiffs and to have their respective attorneys appointed as co–lead counsel.

For the reasons that follow, the Court (1) consolidates these two actions, (2) appoints Mississippi and the Selz Funds as co–lead plaintiffs, and (3) appoints as co–lead counsel the respective attorneys for Mississippi and for the Selz Funds: Bernstein Litowitz Berger & Grossman LLP, Labaton Sucharow LLP, and Gold Bennett Cera & Sidener LLP.

---

[1] Although Ostroviak did not file a formal motion to serve as lead plaintiff, the Court considers him as a potential lead plaintiff because he filed a Complaint.  *See* 15 U.S.C. § 78–u4(a)(3)(B)(iii)(I); *City of Monroe Emps. Ret. Sys. v. Hartford Fin. Servs. Group, Inc.*, 269 F.R.D. 291, 293 (S.D.N.Y. 2010).

**I.     Background**[2]

Defendant MM is a digital advertising company that provides services to developers and advertisers. Mississippi Compl. ¶¶ 5–6; Ostroviak Compl. ¶¶ 4–5. Its advertising services focus on the mobile computing segment. These include smartphones that run the operating systems for the iPhone and the Android. Mississippi Compl. ¶ 5; Ostroviak Compl. ¶ 4.

Central to MM's business model has been the promise that its technology "provides an easy and effective way for developers of applications for mobile devices to integrate [MM's] advertising mechanism into their software, and track and generate accurate reports of results for advertisers' campaigns." Mississippi Compl. ¶ 6; Ostroviak Compl. ¶ 5. Plaintiffs allege that, for years, MM publicly "touted its proprietary technology and data platform, referred to as 'MYDAS,' as a solution for both application developers and advertisers," and touted MYDAS as enabling "(1) the easy and effective integration of Millennial Media advertising into mobile applications by developers; and (2) the flexible targeting and accurate reporting of advertising campaigns for advertisers." Mississippi Compl. ¶ 7; Ostroviak Compl. ¶ 6.

Plaintiffs allege that MM's statements in its public filings, and public statements by its executives, were materially false. They allege that, contrary to MM's representations, MYDAS and its technological features "were either not yet functional or were not sufficiently functional to comport with their descriptions" as set forth in public filings. Mississippi Compl. ¶ 59; *see also* Ostroviak Compl. ¶ 90. As a result, MM's products performed poorly; "the Company had little meaningful ability to track and report end-user clicks, leading to significant over-billing,

---

[2] The following facts are drawn from Mississippi's Complaint ("Mississippi Compl.") (14 Civ. 7923, Dkt. 1), Ostroviak's Complaint ("Ostroviak Compl.") (14 Civ. 8330, Dkt. 1), and the parties' submissions on the lead-plaintiff motions, as cited herein. The Court takes these facts as true solely for the purpose of resolving these motions.

3

which in turn led the Company's core customers to abandon Millennial Media." Mississippi Compl. ¶ 8(b); Ostroviak Compl. ¶ 7(b).

The class period spans from March 28, 2012 through May 7, 2014. Mississippi Compl. ¶ 1; Ostroviak Compl. ¶ 1. Several dates are significant to these motions.

On or about March 28, 2012, MM held its initial public offering (the "IPO"), through which it sold 11.7 million shares, yielding gross proceeds of $152 million. Mississippi Compl. ¶ 2; Ostroviak Compl. ¶ 2. On or about October 24, 2012, MM commenced a second stock offering (the "Secondary Offering"), through which it sold an additional 11.5 million shares, yielding gross proceeds of $162 million. Mississippi Compl. ¶ 2; Ostroviak Compl. ¶ 2. In connection with both of these offerings, MM filed a registration statement and a prospectus with the U.S. Securities and Exchange Commission (the "SEC"), in which it touted MYDAS's capabilities. Mississippi Compl. ¶¶ 56–58; Ostroviak Compl. ¶¶ 29–31; 45–47.

On February 19 and August 13, 2013, MM issued press releases announcing MM's acquisitions of Metaresolver, Inc. and Jumptap, Inc., respectively. These announcements prompted MM's share price to drop, because the need for these acquisitions was taken to reveal shortcomings with MM's existing platform. Mississippi Compl. ¶¶ 9–10; Ostroviak Compl. ¶¶ 8–9.

On May 7, 2014—the final day of the class period—after the markets closed, MM issued a press release reporting disappointing revenue for the first quarter of 2014 and projecting "dour revenue guidance for the coming quarter . . . . Additionally, the Company revealed that its Chief Financial Officer," Michael Avon, would step down later that year. Mississippi Compl. ¶ 13; Ostroviak Compl. ¶ 12. The following day, MM's stock price fell more than 37%. Mississippi

4

Compl. ¶ 13; Ostroviak Compl. ¶ 12. In total, the stock price fell more than 86% during the class period. Mississippi Compl. ¶ 14; Ostroviak Compl. ¶ 13.

On September 30, 2014, Mississippi filed a Complaint, *see* 14 Civ. 7923, Dkt. 1, and published a notice of this action on *Globe Newswire*, a "widely circulated national business-oriented wire service," Dkt. 45, Ex. A, at 4 (citing 15 U.S.C. § 78u–4(a)(3)(A)(i)). On October 17, 2014, Ostroviak filed a Complaint, as well. 14 Civ. 8330, Dkt. 1.

## II.   Consolidation

### A.   Legal Standards

Federal Rule of Civil Procedure 42(a) provides that, "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."

Rule 42(a) "empowers a trial judge to consolidate actions for trial when there are common questions of law or fact," and where consolidation will avoid needless costs or delay. *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990); *see also Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999). "Typically, considerations of judicial economy favor consolidation, but 'the benefits of efficiency can never be purchased at the cost of fairness.'" *M & T Mortg. Corp. v. White*, No. 04 Civ. 4775 (WFK) (VVP), 2012 WL 715896, at *1 (E.D.N.Y. Feb. 14, 2012) (quoting *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993)), *report and recommendation adopted*, No. 04 Civ. 4775 (WFK) (VVP), 2012 WL 954651 (E.D.N.Y. Mar. 5, 2012). Before a Court orders a consolidated trial, it must consider several factors and determine, *inter alia*, whether the gains in efficiency and economy are outweighed by

the "risks of prejudice and possible confusion." *Johnson*, 899 F.2d at 1284 (citation and internal quotation marks omitted).

In the securities context, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, provides that consolidation should occur where multiple actions assert "substantially the same claim." *Id.* § 78u–4(a)(3)(B)(ii).

### B. Analysis

In this case, all parties seek consolidation, and consolidation clearly is merited. *See* 14 Civ. 7923, Dkt. 24, 27, 30, 31; 14 Civ. 8330, Dkt. 5. Both Complaints sue MM under the Exchange Act "on behalf of all persons or entities" who acquired MM securities between March 28, 2012 (the IPO) and May 7, 2014. Mississippi Compl. ¶ 1; Ostroviak Compl. ¶ 1. Both center on the same facts: MM's allegedly false and misleading statements about MYDAS, MM's allegedly false and misleading statements in connection with its equity financings in 2012, and MM's acquisitions of Metaresolver and Jumptap in 2013. The defendants in the two suits are also common: They include MM executives such as Paul J. Palmieri, MM's President and CEO until January 2014; Michael Barrett, MM's President and CEO after that point; and Michael Avon and Andrew J. Jeanneret, MM's chief financial officer and chief accounting officer, respectively, during the class period. Mississippi Compl. ¶¶ 31–34, 111; Ostroviak Compl. ¶¶ 20–23. Although the Mississippi Complaint names other defendants and includes additional claims (*see* Mississippi Compl. ¶¶ 34–46), the lawsuits are, overwhelmingly, similar.

Courts routinely consolidate securities class actions arising from the same allegedly actionable statements. *See, e.g.*, *Simmons v. Spencer*, No. 13 Civ. 8216 (RWS), 2014 WL 1678987, at *2 (S.D.N.Y. Apr. 25, 2014); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190

(S.D.N.Y. 2008). All relevant factors support consolidation here. Accordingly, the Court consolidates these actions.

### III. Selecting the Lead Plaintiff: The PSLRA Requirements

Motions for appointment of lead plaintiff and approval of lead counsel in putative class actions brought under the securities laws are governed by the Private Securities Litigation Reform Act ("PSLRA"). *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *2 (S.D.N.Y. May 31, 2012); *Vladimir v. Bioenvision Inc.*, No. 07 Civ. 6416 (SHS) (AJP), 2007 WL 4526532, at *2 (S.D.N.Y. Dec. 21, 2007). The PSLRA directs the court to appoint as lead plaintiff the party or parties "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u–4(a)(3)(B)(i). Under the PSLRA, there is a rebuttable presumption that the most adequate plaintiff is the person or group of persons that: (1) has either "filed a complaint or made a motion in response to a notice";[3] (2) in the determination of the Court, has the "largest financial interest in the relief sought by the class";[4] and (3) satisfies all the requirements of Federal Rule of Civil Procedure 23, which governs class actions.[5]

#### A. Notice

All five putative lead plaintiffs satisfy the first requirement, as each has either filed a complaint or submitted a timely motion for lead plaintiff status. *See* 15 U.S.C. § 78–u4(a)(3)(B)(iii)(I); *City of Monroe*, 269 F.R.D. at 293.

---

[3] *Id.* § 78u–4(a)(3)(B)(iii)(I)(aa).

[4] *Id.* § 78u–4(a)(3)(B)(iii)(I)(bb).

[5] *Id.* § 78u–4(a)(3)(B)(iii)(I)(cc).

B.      **Financial Interest**

In determining who has the largest financial stake in the litigation, courts in this circuit have traditionally applied a four-factor test, first set forth in *Lax v. First Merchants Acceptance Corp.*, No. 97 Civ. 2715 (DHC), 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997).  These "*Lax*" factors include:

> (1) the total number of shares purchased during the class period;
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and
> (4) the approximate losses suffered.

*City of Monroe*, 269 F.R.D. at 293.

Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant.  *See, e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 93 (S.D.N.Y. 2007) ("Although courts have differed on how much weight to assign to each of the *Lax* factors, we, as have other courts, shall place the most emphasis on the last of the four factors: the approximate loss suffered by the movant."), *reconsidered on other grounds*, In re IMAX Sec. Litig., No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009); *Bo Young Cha*, 2012 WL 2025850, at *2; *Reimer v. Ambac Fin. Group Inc.*, No. 08 Civ. 411 (NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (KNF), 2007 WL 2197836, *6–7 (S.D.N.Y. July 31, 2007); *Strougo v. Brantley Capital Corp.*, 243 F.R.D. 100, 104–05 (S.D.N.Y. 2007); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06 Civ. 1825 (NGC), 2007 WL 680779, at *3 (E.D.N.Y. Mar. 2, 2007), *aff'd on reconsideration*, 2008 WL 820015 (E.D.N.Y. Mar. 25, 2008); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 128 (S.D.N.Y.

2011) ("[I]n determining the largest financial interest, 'most courts simply determine which potential lead plaintiff has suffered the greatest total losses.'").

Here, of the five lead plaintiff candidates, three allege losses under $200,000: Christensen lost $95,000, *see* 14 Civ. 7923, Dkt. 32; Kang lost $170,000, *see id.* Dkt. 28; and Ostroviak lost less than $40,000, *see* Ostroviak Compl., p. 47.[6] In contrast, Mississippi lost $1.75 million, *see id.* Dkt. 33, and the Selz Funds lost $3.6 million, *see id.* Dkt. 26. Under the PSLRA, Christensen, Kang, and Ostroviak's financial interests are far too small, relative to the other lead-plaintiff candidates, for them to credibly bid for appointment. *See* 15 U.S.C. §§ 77z–1(a)(3)(B)(iii); 78u–4(a)(3)(B)(iii). The other two candidates are institutional investors, the type of investor Congress prefers as lead plaintiffs. *See, e.g.*, H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) (stating that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions"); *Glauser v. EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (citation omitted).

Both institutional investors' losses are clearly substantial. The Selz Funds have the largest financial interest; their alleged losses double Mississippi's. Were "financial interest" the sole measure of appointing a lead plaintiff, and were the Court limited to a single lead plaintiff, the Selz Funds would have a strong claim to appointment.

However, as Mississippi and the Selz Funds recognize in a joint submission in which they recommend their appointment as co–lead plaintiffs, "Mississippi is the only movant to have

---

[6] Although Ostroviak did not specify his losses in his Complaint, *see* Ostroviak Compl., p. 47, his allegations make clear that he lost less than $40,000, *see id.*

purchased Millennial Media common stock pursuant and/or traceable to the Company's initial public offering of stock on March 28, 2012 and the Company's secondary offering of stock on October 24, 2012." 14 Civ. 7923, Dkt. 45, Ex. A, at 2.  From the perspective of adequacy and typicality, this fact may prove significant.  It may prove, for example, not to be in the best interests of the entire putative class to entrust its claims solely to a representative that did not own MM stock during the entire class period.  Depending on how the facts develop, this could give rise to a challenge to the lead plaintiff's ability to represent the class, potentially resulting in non-certification or in shortening the class period.

On these facts, therefore, the Court concludes that it is in the class's best interests to have co–lead plaintiffs, provided (the Court addresses this issue below) that the co–lead plaintiffs satisfy the relevant requirements of Federal Rule of Civil Procedure 23.  A co–lead plaintiff structure best protects the interests of the class; affords the class the benefit of combined resources to defray what may prove to be significant up-front litigation costs; and gives the class the advantages of the combined knowledge, experience, and judgment of both lead plaintiffs.

Indeed, courts routinely adopt a co–lead plaintiff structure where it "best serve[s]" the interests of the proposed class given "the circumstances of th[e] particular case." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998); *see also Gordon v. Sonar Capital Mgmt. LLC*, No. 11 Civ. 9665 (JSR), 2012 WL 1193844, at *2 (S.D.N.Y. Apr. 9, 2012) (appointing co–lead plaintiffs to "combine [their] expertise giv[ing] them a decided advantage in . . . litigating the case"); *Vladimir*, 2007 WL 4526532, at *10–11; *Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ. 8564 (RJH), 2005 WL 883008, at *5 (S.D.N.Y. Apr. 13, 2005); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 411 (S.D.N.Y. 2004); *accord In re*

*Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 131 (D. Conn. 2005); *In re Cable & Wireless, PLC Sec. Litig.*, 217 F.R.D. 372, 376 (E.D. Va. 2003); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00 Civ. 152 (JEI), 2000 WL 486956, at *3 (D.N.J. Apr. 24, 2000); *Yousefi v. Lockheed Martin Corp.*, 70 F. Supp. 2d 1061, 1071 (C.D. Cal. 1999). As courts have noted, "the plain language of the PSLRA expressly contemplates the appointment of more than one lead plaintiff." *Oxford Health Plans*, 182 F.R.D. at 47 (citing 15 U.S.C. § 78u–4(a)(3)(B)(i) (court "should appoint as lead plaintiff *the member or members* of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of the class members . . .") (emphasis added); *id.* § 78u–4(a)(3)(B)(iii)(I) ("[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is *the person or group of persons* that . . . .") (emphasis added); *id.* § 78u–4(a)(3)(B)(iv) ("[D]iscovery relating to whether *a member or members* of the purported plaintiff class is the most adequate plaintiff may be conducted by a plaintiff only if . . . .") (emphasis added); H.R. Rep. No. 104-369 at 32 (1995), *reprinted in* 1996 U.S.C.C.A.N. 730 ("The House Conference Report on the PSLRA stated that the lead plaintiff provisions were "intended to encourage the most capable *representatives* of the plaintiff class to participate in class action litigation and to exercise supervision and control of the lawyers for the class.") (emphasis added)).

Accordingly, considering the particular facts of this case, the Court finds that the class's interests will be best served by having Mississippi and the Selz Funds serve as co–lead plaintiffs.

### C. Rule 23 Requirements

The PSLRA's final requirement is that the proposed lead plaintiff (or co–lead plaintiffs) satisfy Rule 23's requirements for class certification: numerosity, commonality, typicality, and adequacy. At this early stage of litigation, however, "only the last two factors—typicality and

11

adequacy—are pertinent." *Bo Young Cha*, 2012 WL 2025850, at *6 (quoting *Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324 (S.D.N.Y. 2004)).

Lead plaintiffs' claims are typical where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (citations omitted). A lead plaintiff is adequate where it "does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser*, 236 F.R.D. at 189 (citing *Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000)). "The claims of [Mississippi and the Selz Funds] are typical of the class because their claims and injuries arise from the same conduct from which the other class members' claims and injuries arise. At the present time it is unclear what defenses, if any, will be raised against particular class members, but it is far less likely that any potential defenses would successfully rebut a finding of typicality where more than one investor or group of investors who made the decision to purchase the security is appointed as class representative." *Oxford Health Plans*, 182 F.R.D. at 49–50 (citations omitted).

Because the co–lead plaintiffs—as of this early stage—thus far satisfy all of the PSLRA requirements, the Court finds that they are, together, the most adequate plaintiffs. There has been no credible claim that they "will not fairly and adequately protect the interests of the class" or are subject to "unique defenses" that render them incapable of adequately representing the class. 15 U.S.C. § 78u–(4)(a)(3)(B)(iii)(II). The Court therefore appoints Mississippi and the Selz Funds co–lead plaintiffs.

### IV.     Appointing Lead Counsel

The most adequate plaintiffs may retain counsel to represent the class, subject to the Court's approval. *Id.* § 78u–(4)(a)(3)(B)(v). Mississippi has selected the law firms of Bernstein Litowitz Berger & Grossman LLP and Labaton Sucharow LLP; the Selz Funds have selected the law firm of Gold Bennett Cera & Sidener LLP. Having reviewed each firm's submissions as to its pertinent background and experience, including its experience litigating securities class actions, the Court finds that each firm is qualified to serve as co–lead counsel. Accordingly, the Court appoints Bernstein Litowitz Berger & Grossman LLP, Labaton Sucharow LLP, and Gold Bennett Cera & Sidener LLP as co–lead counsel.

As similarly situated courts have noted, this joint appointment "is done with the understanding that there shall be no duplication of attorney's services," and that counsel "will work together to maximize recovery for the proposed class." *Oxford Health Plans*, 182 F.R.D. at 50; *accord Gordon*, 2012 WL 1193844, at *2.

## CONCLUSION

To summarize, these two cases (14 Civ. 7923 and 14 Civ. 8330) are now consolidated for all purposes, and shall proceed under the name, *In re Millennial Media, Inc. Securities Litigation*, and under the case number, 14 Civ. 7923. Mississippi and the Selz Funds' motion seeking appointment as co–lead plaintiffs is granted. Christensen's, Kang's, and Ostroviak's respective bids to serve as lead plaintiff are denied. The Court appoints Bernstein Litowitz Berger & Grossman LLP, Labaton Sucharow LLP, and Gold Bennett Cera & Sidener LLP as co–lead counsel.

The Clerk of the Court is directed to terminate the motions pending at 14 Civ. 7923, Dkt. 24, 27, 30, 31; and 14 Civ. 8330, Dkt. 5. In light of the consolidation, the Clerk of Court is also directed to close the Ostroviak case, 14 Civ. 8330.

Per the parties' joint letter, *see* Dkt. 36, the parties are directed to submit to the Court, by February 17, 2015, a proposed, and expeditious, schedule for (1) the filing of a consolidated complaint; (2) the filing of defendants' response; and (3) in the expectation that that response may take the form of a motion to dismiss, the filing of opposition and reply briefs.

SO ORDERED.

                                                  *Paul A. Engelmayer*
                                          PAUL A. ENGELMAYER
                                          United States District Judge

Dated: February 10, 2015
       New York, New York